UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| XCEL SOFTWARE, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| DEPOT AMERICA, INC., | : | |
| | : | |
| Defendant. | x | Civil Action No. 04-11581 REK |

| | | |
|---|---|---|
| DEPOT AMERICA, INC., | : | |
| | : | |
| Counterclaim-Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| XCEL SOFTWARE, INC. and JOSEPH DIPILATO, | : | |
| | : | |
| Counterclaim-Defendants. | : | |
| | x | |

## ANSWER AND COUNTERCLAIMS

Defendant Depot America, Inc. (hereafter "Depot America") answers the First Amended Complaint as follows:

1.    Depot America admits that plaintiff Xcel Software, Inc. (hereafter "Xcel") purports to bring this action on the bases stated, but denies that there is any merit to Xcel's contentions and denies all other allegations of paragraph 1.

2.    Depot America admits the allegations of paragraph 2.

3.    Depot America admits the allegations of paragraph 3.

4.    Depot America denies the allegations of paragraph 4.

5.     Depot America admits that there is a diversity of citizenship between the parties, but denies that a substantial part of the events giving rise to the claims occurred in this judicial district and that venue is therefore proper under 28 U.S.C. § 1391.

6.     Depot America denies that the unsigned document attached as Exhibit A is a valid or enforceable agreement, denies that Section 13.5 in that unsigned agreement is binding on this Court for jurisdiction and venue, and therefore denies the allegations of paragraph 6.

7.     Depot America is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 7 and therefore denies them.

8.     Depot America is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 8 and therefore denies them.

9.     Depot America is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 9 and therefore denies them.

10.     Depot America admits that Exhibit B contains a copy of what are identified as copyright registrations TX962-907 and TX 5 747-735, but is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 10 and therefore denies them.

11.     Depot America is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 11 and therefore denies them.

12.     In response to paragraph 12, Depot America avers that in or about 1989, Depot America agreed to license Xcel's ServiceWorks software, and Xcel agreed to provide support for the software and modifications or customization services to improve the program, all at hourly rates.  Depot America's license to use the program was based on the number of users and required a one-time payment for each such user.  For the license, support services, and

2

customization services, Depot America paid Xcel many hundreds of thousands of dollars dating back to 1989 and continuing to the present.   Depot America denies all allegations of paragraph 12 which are inconsistent with its averments in this paragraph.

13.   In response to paragraph 13, Depot America avers that in February 2002, Xcel developed a Microsoft SQL platform of its ServiceWorks program for Depot America's business, and that Depot America paid Xcel in excess of $200,000 to have Xcel adapt this program to Depot America's business, and that Depot America then paid one-time user fees to license the use of this program, but denies all allegations of the first sentence of paragraph 13 which are inconsistent with these averments.   Depot America denies that the unsigned agreement was needed by Depot America to use the ServiceWorks software for which Depot America had already paid for a license, and denies all other allegations of the second sentence of paragraph 13.   Depot America admits that what purports to be an unsigned license is attached as Exhibit C, but denies all remaining allegations of the third sentence of paragraph 13.

14.   Depot America admits that the quoted portion with additional language which has been removed by Xcel by the use of ellipsis is contained in the unsigned document attached as Exhibit C, but denies all other allegations of paragraph 14.

15.   Depot America admits that it purchased a license to use the ServiceWorks software, that it paid one-time payments for the number of users at Depot America who may use the software, and that the unsigned document attached as Exhibit C has instructions for users to click the yes or no button, but is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 15 and therefore denies them.

16.   Depot America admits that it had, as of July 5, 2004, paid Xcel for 115 users of the ServiceWorks software, but denies all remaining allegations of paragraph 16.

3

17.    In response to paragraph 17, Depot America avers that in 2004 (as well as for prior years), Depot America entered into an agreement whereby Xcel was obliged to provide support for the ServiceWorks program on an agreed hourly basis, and Xcel and Depot America have had an agreement for many years whereby Xcel has provided customization and modifications for the ServiceWorks program; Depot America denies that the unsigned document attached as Exhibit C is a valid and enforceable agreement which controls the relationship between Depot America and Xcel, and denies all allegations of paragraph 17 which are inconsistent with these averments.

18.    Depot America denies that in June 2004 Xcel created a substantial additional modification to the ServiceWorks software, denies that the second unsigned document attached as Exhibit A was provided by Xcel as a result of modifications to the ServiceWorks software, and denies that the unsigned document attached as Exhibit A was lawfully and legally entered into as a contract between Xcel and Depot America, and denies all remaining allegations of paragraph 18.

19.    Depot America admits that on or about July 6, 2004, and without the prior knowledge of Depot America, Xcel installed software which prevented Depot America's licensed users from using ServiceWorks software — including past versions — to access Depot America's data unless the user clicked a button labeled "Yes" or the like, but denies all other allegations of paragraph 19.

20.    Depot America is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 20 and therefore denies them.

4

21.     Depot America admits that the unsigned document attached as Exhibit A contains the quoted language, but with additional provisions which had been excluded by Xcel, but denies all remaining allegations of paragraph 21.

22.     Depot America admits the allegations of the first sentence of paragraph 22. Depot America denies that by January 1, 2004, it was paying approximately $350,000 annually for ServiceWorks licenses, support, and customization services, but admits that it had paid a significant fee to Xcel for the use license and significant additional charges for support and customization on an annual basis.

23.     Depot America admits the allegations of the first sentence of paragraph 23, but denies the allegations of the second sentence of paragraph 23.

24.     Depot America denies the allegations of paragraph 24.

25.     Depot America denies the allegations of paragraph 25.

26.     Depot America denies the allegations of paragraph 26.

27.     Depot America admits that in February 2004, Xcel participated in the development of a new feature for the ServiceWorks software which was a web portal which permitted one of Depot America's customers to access certain data, but denies all other allegations of paragraph 27.

28.     Depot America specifically denies that it removed a copyright notice from the ServiceWorks software, that the mock-up program in question was available to any customer, and that Xcel represented that Depot America had acted improperly, and denies all remaining allegations of paragraph 28.

29.     Depot America admits the allegations of paragraph 29.

ID # 403881v01/2585-8/ 08.18.2004

30.    Depot America avers that it asked Xcel for a quote for the addition of database features to provide additional functionality to the ServiceWorks software used by Depot America; Xcel provided an initial specification and then an additional specification; Depot America did not lead Xcel to believe that it would accept Xcel's quote; and Depot America informed Xcel that Depot America would perform the work itself after Depot America determined it could perform the project more quickly, less expensively and without use of the ServiceWorks software; and except as admitted, Depot America denies all the remaining allegations of paragraph 30.

31.    Depot America admits that on June 24, 2004, Mr. DiPilato of Xcel traveled to Depot America's offices in New Jersey, but denies all remaining allegations of paragraph 31.

32.    Depot America denies that Xcel had provided a substantial modification to the ServiceWorks program on July 6, 2004, denies that Depot America agreed to the terms of the document attached as Exhibit A, and denies all other allegations of paragraph 32.

33.    Depot America denies the allegations of paragraph 33.

34.    Depot America denies the allegations of paragraph 34.

35.    Depot America admits that an attorney representing Xcel had sent a facsimile letter of July 14, 2004, to Depot America claiming that effective immediately Xcel had terminated two license agreements with Depot America, but specifically denies that there had been any breach of any agreement between Depot America and Xcel or any violation of federal copyright law, as alleged, and denies all remaining allegations of paragraph 35.

36.    Depot America specifically denies that Xcel had the right to terminate Depot America's use of the ServiceWorks program, admits that the unsigned document attached as Exhibit C has the language which has been quoted by Xcel, admits that Depot America has

6

continued to request Xcel's technical support because Depot America has paid for such technical support and has licensed the ServiceWorks program, and denies all other allegations of paragraph 36.

37.     Depot America admits that the unsigned document has the provision quoted by Xcel, except that it contains additional portions which have been removed by Xcel, but denies all remaining allegations of paragraph 37.

38.     Depot America repeats and realleges its responses to paragraphs 1-37 as if set forth here in full.

39.     Depot America is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 39 and therefore denies them.

40.     Depot America is without knowledge or information sufficient to form a belief as to the truth of the allegations of the first sentence of paragraph 40 and therefore denies them; Depot America denies the allegations of the second and third sentences of paragraph 40.

41.     Depot America denies that Xcel had the right to terminate Depot America's use of the ServiceWorks program and therefore denies all allegations of paragraph 41.

42.     Depot America denies the allegations of paragraph 42.

43.     Depot America denies the allegations of paragraph 43.

44.     Depot America repeats and realleges its responses to paragraphs 1-43 as if set forth here in full.

45.     Depot America denies the allegations of paragraph 45.

46.     Depot America denies the allegations of paragraph 46.

47.     Depot America denies the allegations of paragraph 47.

ID # 403881v01/2585-8/ 08.18.2004

48.    Depot America repeats and realleges its responses to paragraphs 1-47 as if set forth here in full.

49.    Depot America denies the allegations of paragraph 49.

50.    Depot America denies the allegations of paragraph 50.

51.    Depot America denies the allegations of paragraph 51.

52.    Depot America repeats and realleges its responses to paragraphs 1-51 as if set forth here in full.

53.    Depot America is without knowledge or information sufficient to form a belief as to the truth of the allegations of the first sentence of paragraph 53 and therefore denies them; Depot America denies the allegations of the second sentence of paragraph 53.

54.    Depot America denies the allegations of paragraph 54.

55.    Depot America denies the allegations of paragraph 55.

56.    Depot America denies the allegations of paragraph 56.

57.    Depot America repeats and realleges its responses to paragraphs 1-56 as if set forth here in full.

58.    Depot America denies the allegations of paragraph 58.

59.    Depot America is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 59 and therefore denies them.

60.    Depot America denies the allegations of paragraph 60.

61.    Depot America denies the allegations of paragraph 61.

62.    Depot America denies the allegations of paragraph 62.

63.    Depot America repeats and realleges its responses to paragraphs 1-62 as if set forth here in full.

8

64.    Depot America denies the allegations of paragraph 64.

65.    Depot America denies the allegations of paragraph 65.

66.    Depot America denies the allegations of paragraph 66.

67.    Depot America denies the allegations of paragraph 67.

### FIRST AFFIRMATIVE DEFENSE

68.    Each of Counts 1-6 of Xcel's Amended Compliant fail to state a claim for which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

69.    The Court lacks subject matter jurisdiction over this case as brought under the copyright statute because the parties have entered into an agreement governing the use of any copyrighted materials.

### THIRD AFFIRMATIVE DEFENSE

70.    If binding, the first alleged clickwrap agreements comprised individual user-specific licenses.  As such, any alleged breach only relates to the agreements involving users Gorman and Thoennes from Depot America and Xcel may not terminate the agreements with the many other users at Depot America that are not even alleged to be in breach.

### FOURTH AFFIRMATIVE DEFENSE

71.    If there was any breach of the first alleged clickwrap agreement by Depot America, the breach was not material and was cured before the agreement was terminated by Xcel.

### FIFTH AFFIRMATIVE DEFENSE

72.    If binding, the second alleged clickwrap agreements comprised individual user-specific licenses.  As such, any alleged breach only relates to the agreements involving

9

users Gorman and Thoennes from Depot America and Xcel may not terminate the agreements with the many other users at Depot America that are not even alleged to be in breach.

## SIXTH AFFIRMATIVE DEFENSE

73.     The second alleged clickwrap agreement is ineffective and unenforceable because it lacks consideration.

## SEVENTH AFFIRMATIVE DEFENSE

74.     The second alleged clickwrap agreement is ineffective and unenforceable because it was entered into under duress.

75.     On or about July 6, 2004, Xcel presented the second alleged agreement as a clickwrap agreement to all users of the ServiceWorks program for which Depot America had paid a license.

76.     Prior to presenting the alleged clickwrap second agreement to users, Xcel had not advised Depot America that the agreement would be presented and that it materially changed the terms regarding Depot America's use of the ServiceWorks program.

77.     When Xcel presented the alleged second clickwrap agreement, it was aware that Depot America was dependent on the ServiceWorks program for running its business such that any cessation in Depot America's ability to use the ServiceWorks program would cause severe and irreparable injury to its business.

78.     At the same time it installed the second clickwrap agreement in Depot America's systems without Depot America's permission, Xcel simultaneously disabled Depot America's prior version of the ServiceWorks program for which Depot America had already paid a license and which maintained essential data owned by Depot America to run its business.   Xcel

ID # 403881v01/2585-8/ 08.18.2004

knowingly disabled Depot America's ability to run its own business in order to force Depot America to accept the new terms of the second alleged agreement.

79.    The second alleged agreement is unenforceable because if it was entered into, it was entered into under duress, by a threat to Depot America's business, by acts by Xcel in disabling Depot America's access to its own data and through unconscionable conduct by Xcel in an attempt to have Depot America agree to terms which are unreasonable.

### EIGHTH AFFIRMATIVE DEFENSE

80.    The second unsigned alleged clickwrap agreement is invalid because it purports to modify the terms under which Depot America is entitled to use the ServiceWorks program, in conflict with the first clickwrap agreement allegedly by Xcel that provides that it may not be modified except by a writing signed by Xcel and Depot America.

### NINTH AFFIRMATIVE DEFENSE

81.    By its conduct, Xcel has engaged in unclean hands and is not entitled to an injunction or damages.

### TENTH AFFIRMATIVE DEFENSE

82.    If there was any breach of the second alleged clickwrap agreement by Depot America, the breach was not material and was cured before Xcel terminated the agreement.

### ELEVENTH AFFIRMATIVE DEFENSE

83.    Each of the claims by Xcel are barred by the Doctrine of Fraud, as set forth in the counterclaims below.

### TWELFTH AFFIRMATIVE DEFENSE

84.    Depot America was entitled to modify the copy of the database which it owned under 17 U.S.C. § 117.

ID # 403881v01/2585-8/ 08.18.2004

## COUNTERCLAIMS

Depot America, Inc., for its counterclaims against Xcel Software, Inc. and Joseph DiPilato, alleges and avers as follows:

### PARTIES

1.      Defendant-counterclaim-plaintiff Depot America, Inc. ("Depot America") is a New Jersey corporation with its principal place of business at 1495 Highway 34 South, Farmingdale, New Jersey 07727.

2.      Plaintiff-counterclaim-defendant Xcel Software, Inc. ("Xcel") is a Massachusetts corporation with its principal place of business at 124 Mt. Auburn Street, Suite 200N, Cambridge, Massachusetts 02138.

3.      Counterclaim-defendant Joseph DiPilato ("DiPilato") is the owner of plaintiff-counterclaim-defendant Xcel.  Upon information and belief, DiPilato directed the activities of Xcel that caused these counterclaims and the damage to Depot America.

### JURISDICTION AND VENUE

4.      This Court has jurisdiction over these counterclaims pursuant to 28 U.S.C. §§ 1331, 1332 1030(a)5 and (g).  This Court has supplemental jurisdiction over the claims arising under State law pursuant to 28 U.S.C. § 1367.

5.      Venue is proper in this district under 28 U.S.C. § 1391 as a substantial portion of the events giving rise to Depot America's claims have taken place in this district, and Xcel and DiPilato reside, or do business, or both, within this district.

### FACTS COMMON TO ALL COUNTERCLAIMS

6.      Founded in 1988, Depot America is a market-leading reseller of printer service parts and solutions.  Depot America is a leader in OEM support and exchange services for laser,

ID # 403881v01/2585-8/ 08.18.2004

ink-jet, dot matrix, and point of sale printers, offering thousands of new and refurbished printer parts and subassemblies.

7.      Depot America is a Hewlett-Packard authorized parts reseller and a master parts distributor for Lexmark, providing unmatched availability, service, and competitive pricing.

8.      Depot America also has a contractual relationship with Canon U.S.A., Inc., whereby Depot America supports Canon's printers and the return, repair, and replacement of those printers under Canon's warranty.  This contractual relationship between Depot America and Canon is a valuable business relationship and contract.

9.      Depot America has developed policies which have distinguished it among other resellers of printer service parts and solutions, including an order accuracy and fill record of 99% or better, a guaranteed same-day shipment of any in-stock part prior to 7:30 p.m., a parts inventory of about $5 million, and a proven track record in service support.  Depot America operates a state-of-the-art 80,000 square feet facility.

10.     Beginning in about 1989, Depot America entered into an arrangement with Xcel whereby Xcel provided its ServiceWorks software to be used for Depot America's business. Xcel licensed Depot America to use its ServiceWorks software for Depot America's business, and Xcel agreed to provide support for the software and modifications or customization services to improve the software at established hourly rates.  Depot America paid Xcel a one-time fee per user for a license to use the software in its business, and Depot America paid for support services and customization services based on an established hourly rate as set forth in invoices provided by Xcel.

11.     Based on the license to use the ServiceWorks program, Depot America has used the ServiceWorks software for tracking orders, shipping, and repairing printers and other

equipment, and its business has come to depend on the ServiceWorks program to both process and maintain its essential customer, product, vendor, and similar data.

12.    Depot America uses highly confidential customer information and data in order to run its business.  The confidential customer information includes the identification of Depot America's customers, the particular products ordered, the amounts and costs of such products, and credit information relating to customers.  As a regular part of its use of the ServiceWorks software, Depot America inputs all of this customer information or data into the ServiceWorks database in order to run its business.  Should Depot America's access to this essential data be curtailed, if only for a short time, Depot America's business and goodwill would be seriously impaired and potentially destroyed.

13.    The ServiceWorks program which Depot America has paid for licenses to use requires regular support.  The support can only be provided by Xcel because it alone has access to the source code.  Since 1992, Depot America and Xcel have agreed that Xcel will provide the necessary support for the ServiceWorks program and Depot America has paid for this support.

14.    At all times, Xcel has been aware that were it to pull its support from the ServiceWorks program used by Depot America, this action would threaten the very viability of Depot America's business.  A discontinuation of support could render the ServiceWorks program unusable and destroy Depot America's ability to process orders and provide repair and other service obligations to its customers.

15.    In about February 2002, Xcel developed a Microsoft platform of its ServiceWorks program for Depot America's business.  Depot America paid Xcel in excess of $200,000 to have Xcel adapt the new platform of its ServiceWorks program so it could be used in Depot America's business.  Depot America also paid Xcel one-time user fees to license the use of this program.

14

To the present date, Depot America has paid in excess of $100,000 to Xcel for one-time user fees to license the new version of the ServiceWorks program.

16.     For the new version of its ServiceWorks software which had been licensed by Depot America, Xcel reconfirmed its obligations to provide support services and customization services.  Depot America has continued to pay Xcel for customization and support services, at a level as high as $300,000 in a single year to maintain, use, and improve the ServiceWorks program for Depot America's business.

17.     Xcel contends that along with the new version of the ServiceWorks program in February 2002, it provided a clickwrap agreement which was accepted by users at Depot America.  A copy of that alleged clickwrap agreement has been attached as Exhibit C to the First Amended Complaint.  Depot America has been unable to confirm that any user at Depot America even saw, let alone accepted, this alleged February 2002 clickwrap agreement.

18.     Xcel and DiPilato did not present the alleged February 2002 clickwrap agreement to Depot America before it was displayed with the new version of the ServiceWorks program that Depot America had paid for.

19.     The alleged February 2002 clickwrap agreement provides in part:

> You may not reverse engineer, decompile or disassemble the License Software, transfer the License Software to any third party, or use the License Software to perform services for any third party.

(*See* Am. Complt. Exh. C.)  Even if the alleged February 2002 clickwrap agreement is binding on Depot America, Depot America has not violated the terms of this agreement.

20.     At the end of 2003, Xcel and DiPilato approached Depot America with proposals to renew the ServiceWorks maintenance plan by which Xcel was obligated to provide support services.  As options, Xcel and DiPilato described an enhancement plan which included software

15

updates, software upgrades, source safe, price protection and "per incident support" obligations for Xcel, and a support plan containing only support obligations. Knowing Depot America's support needs, Xcel and DiPilato recommended that Depot America pay for a year of the enhancement plan in advance, such plan including a "per incident support" obligation by Xcel.

21.     In January 2004, Xcel invoiced Depot America for "ServiceWorks annual enhancement plan renewal" in the amount of $23,600, and Depot America paid that amount obligating Xcel to provide "per incident support" through the end of 2004.

22.     Beginning in January 2004, Depot America added skilled employees needed to develop an e-commerce aspect for its business. Depot America's employees have worked to develop software for e-commerce ordering and communications with customers, and all such development has been independent and without reverse engineering of the ServiceWorks program of Xcel.

23.     Depot America has recognized that the ServiceWorks program is very expensive to support and modify, to such an extent that Depot America has paid Xcel and DiPilato as much as $300,000 in a single year to support and modify the program.

24.     Depot America is entitled to use its own programmers to develop its own programs as long as it does not violate any agreement with Xcel or infringe on Xcel's copyrights for the ServiceWorks program.

25.     As alleged in the First Amended Complaint, Xcel resents Depot America's efforts to use its own programmers for the purpose of decreasing its dependence on, and payments to, Xcel for new software projects.

26.     In June 2004, Depot America asked Xcel and DiPilato to provide a specification or proposal for the addition of database features to provide additional functionality of the

16

ServiceWorks software.  Xcel provided an initial specification, and then an additional specification, but Depot America decided that it would be able to perform the work itself.

27.     Depot America undertook work to provide the additional database feature, and did so without violating the terms of the February 2002 "clickwrap" agreement.  Specifically, Depot America did not "reverse engineer, decompile or disassemble" the ServiceWorks software to provide this feature.

28.     Suspecting that Depot America was attempting to decrease its dependence on Xcel, on June 24, 2004, DiPilato met with persons at Depot America.  At this time, DiPilato did not state what conduct he believed that Depot America had done which could have violated any existing agreement or infringed any copyright in the ServiceWorks program.

29.     On information and belief, in late June 2004, Xcel and DiPilato recognized that what they believed Depot America was doing was not a violation of the February 2002 alleged clickwrap agreement.

30.     In an effort to entrap Depot America, Xcel had a new clickwrap agreement prepared for the ServiceWorks program even though Depot America had already paid for its license.  This new "clickwrap" is attached as Exhibit A to the First Amended Complaint.  It contains significant and material changes from the alleged February 2002 clickwrap agreement.

31.     On about July 7, 2004, for an insubstantial modification of the ServiceWorks program which was released to all Depot America users on that date, without prior notice to Depot America, Xcel and DiPilato modified the ServiceWorks software and/or databases maintained by the software so as to require a user to click "yes" to the new clickwrap agreement before the user would have access to the ServiceWorks program on which Depot America's business had come to depend.

ID # 403881v01/2585-8/ 08.18.2004

32.    On about July 7, 2004, Xcel and DiPilato modified the ServiceWorks software and/or databases maintained by the software so that the penalty to a user for clicking "no" to the new clickwrap agreement was that neither the old nor new version of the ServiceWorks software would start.

33.    After clicking "no" to the new clickwrap agreement, if a user attempted to start the ServiceWorks software so as to use the old, unmodified version of the software, the user was presented with the same clickwrap the user had rejected.    No matter how many times a user clicked "no" to the new clickwrap, the user was unable to return to or use the old, unmodified version of the ServiceWorks software.

34.    Xcel and DiPilato in connection with installing the new "clickwrap" also disabled the prior version of ServiceWorks which Depot America had already paid for, precluding Depot America's access to its own valuable customer data residing in the database of the prior version of ServiceWorks.  On information and belief, Xcel and DiPilato provided the new "clickwrap" under these conditions in order to force Depot America and its employees to accept the new "clickwrap" or risk closing down their business and disabling their ability to get to customer orders and the other essential data on which they run their business.

35.    On July 7, 2004, the same day that the new clickwrap agreement was presented, Xcel and DiPilato claim to have discovered that Depot America had improperly modified the ServiceWorks program.  Xcel has used the new clickwrap which it had Depot America accept under duress and fraud as a basis for contending that there has been a violation of the agreement.

36.    Depot America has not illegally modified the ServiceWorks software.  The activities which Xcel and DiPilato say they discovered on July 7, 2004, were activities known by DiPilato to have occurred before the second clickwrap was presented and, upon information and

18

belief, were known by DiPilato and Xcel not to constitute a violation of the February 2002 clickwrap.

37.     On July 14, 2004, Xcel, through its attorneys, notified Depot America that its license to use the ServiceWorks software on which its entire business now depended was being terminated immediately based on the disabling clickwrap forced on Depot America without its permission or knowledge just a week before.  Xcel demanded that Depot America immediately stop use of the ServiceWorks software, even though Xcel understood that such action would destroy Depot America's business and prevent Depot America from using its own customer data. Xcel did not inform Depot America of any specific activities that it believed that Depot America's employees had done to violate the alleged agreements.

38.     In its letter of July 14, 2004, Xcel said it would file suit unless Depot America agreed to certain demands by July 21, 2004.  Without advising Depot America, Xcel secretly filed suit on July 16, 2004.

39.     In a discussion between principals regarding the violations, without counsel present, DiPilato stated that Depot America would have to pay him $150,000 for Xcel to agree not to halt its support and work on the ServiceWorks program.

40.     On July 20, 2004, Xcel and DiPilato informed Depot America that Xcel intended to discontinue technical support or assistance to Depot America in connection with its usage of the ServiceWorks program.  As part of this communication, Xcel explicitly recognized that the ServiceWorks program would be likely to fail in its performance without this regular maintenance.  On information and belief, Xcel and DiPilato withheld support as a threat to induce Depot America to pay its demand for $150,000.

19

41.    On July 21, 2004, immediately after Xcel had withdrawn support, Depot America encountered a defect with the ServiceWorks software which required support.  Depot America contacted DiPilato and Xcel to request support help.  Xcel did not respond as it was required by the support agreement.

42.    On the morning of July 22, 2004, Xcel notified Depot America that Xcel would agree to recontinue its support.  Depot America's attorney spent the entire day of July 22, 2004, working out the terms of such an agreement.  At the end of the day, DiPilato changed his mind and refused to continue his support obligation.

43.    On July 23, 2004, following a negotiation to settle this matter, Xcel agreed to recommence its support obligations through August 12, 2004.

44.    Canon U.S.A. is an important customer of Depot America.  Depot America introduced DiPilato and Xcel to Canon U.S.A. in connection with Depot America's business with Canon.

45.    Xcel and DiPilato are aware that Depot America has a long-standing business relationship and agreement with Canon to provide services for Canon printers.

46.    On July 20, 2004, DiPilato and Xcel attempted to interfere with Depot America's agreement with Canon by informing Canon that Depot America had violated its license agreement regarding the ServiceWorks software, that the agreement has terminated, and that Depot America had to stop using the ServiceWorks software and return all copies to Xcel.

47.    DiPilato's and Xcel's improper statements have tortiously interfered with Depot America's business relationship with Canon because the ServiceWorks software is important to the conduct of Depot America's business with Canon.  Canon has demanded that Depot America provide an alternative software to conduct its business with Canon.

20

48.    As a result of DiPilato's and Xcel's interference with Depot America's business with Canon, Depot America has incurred extraordinary expenses and has been irreparably damaged in its goodwill and business relationship with Canon.

## FIRST COUNTERCLAIM
### Breach Of User License

49.    Depot America realleges and incorporates by reference paragraphs 1-48 of the counterclaims as if set forth in full here.

50.    Xcel breached the license agreement covering Depot America's use of the ServiceWorks software by terminating the agreement without cause.

51.    Xcel breached the user license agreement by discontinuing support for the software thereby rendering it unusable by Depot America.

52.    On information and belief, Xcel's aforesaid actions were committed willfully, knowingly, maliciously, and in conscious disregard of Depot America's rights.

53.    The aforesaid conduct of Xcel has caused, and unless restrained by this Court will continue to cause, immediate and irreparable injury to Depot America's property and business.

54.    Depot America has no adequate remedy at law.

## SECOND COUNTERCLAIM
### Breach Of Support Contract

55.    Depot America realleges and incorporates by reference paragraphs 1-54 of the counterclaims as if set forth in full here.

56.    By refusing to provide support for the ServiceWorks program, Xcel has breached the support agreement entered by Depot America.

57.    On information and belief, Xcel's aforesaid actions were committed willfully, knowingly, maliciously, and in conscious disregard of Depot America's rights.

21

58.     The aforesaid conduct of Xcel has caused, and unless restrained by this Court will continue to cause, immediate and irreparable injury to Depot America's property and business.

59.     Depot America has no adequate remedy at law.

### THIRD COUNTERCLAIM
### Federal Computer Sabotage (28 U.S.C. §§ 1030(a)(5) and (g))

60.     Depot America realleges and incorporates by reference paragraphs 1-59 of the counterclaims as if set forth in full here.

61.     By their actions in presenting the modified version of the ServiceWorks program with a new, unannounced clickwrap agreement, and disabling Depot America's use of the prior version of the program and to its own data, Xcel and DiPilato knowingly transmitted a program and intentionally caused damage as a result of impairment to the availability of Depot America's data without the authorization of Depot America.

62.     The effect and intent of such acts by Xcel and DiPilato was to impair the ability of Depot America to gain access to the prior ServiceWorks program and to the data or information of Depot America contained therein.

63.     Xcel and DiPilato's acts caused great and continuing damage to Depot America's property and business in a sum exceeding $5,000.

64.     The aforesaid conduct of Xcel has caused, and unless restrained by this Court will continue to cause, immediate and irreparable injury to Depot America's property and business.

65.     Depot America has no adequate remedy at law.

### FOURTH COUNTERCLAIM
### Tortious Interference With Business Relationship

66.     Depot America realleges and incorporates by reference paragraphs 1-65 of the counterclaims as if set forth in full here.

22

67.    DiPilato and Xcel have intentionally interfered with the agreement and business relationship between Depot America and Canon.

68.    The aforesaid conduct of Xcel and DiPilato constitute tortious interference with Depot America's contractual relations and business relations with Canon, and has caused, and will continue to cause, Depot America immediate, great, and irreparable injury to its business, property, and goodwill.

69.    The aforesaid conduct of Xcel has caused, and unless restrained by this Court will continue to cause, immediate and irreparable injury to Depot America's property and business.

70.    Depot America has no adequate remedy at law.

## FIFTH COUNTERCLAIM

### Fraud

71.    Depot America realleges and incorporates by reference paragraphs 1-70 of the counterclaims as if set forth in full here.

72.    It was the intention of Xcel and DiPilato, in providing the unannounced new clickwrap and disabling Depot America's use of the prior version of the software and its data, to secure through fraud an agreement from Depot America which would result in additional payments from Depot America to Xcel, permit Xcel and DiPilato to have effective control over Depot America's data, hamstring Depot America's ability to obtain computer programming services from sources other than DiPilato and Xcel, and otherwise provide unconscionable control over Depot America's business in general.

73.    Xcel and DiPilato later misrepresented the second clickwrap as a binding agreement in order to terrorize Depot America and threaten it with a shutdown of its business.

ID # 403881v01/2585-8/ 08.18.2004

74.    Depot America reasonably relied on the misrepresentations of Xcel and DiPilato to its detriment.

75.    The aforesaid conduct of Xcel and DiPilato was committed purposefully, deliberately, maliciously, and with the knowledge that it would impact the business and property of Depot America.

76.    The aforesaid conduct of Xcel and DiPilato constitutes fraud in violation of the state law and has caused, and will continue to cause, Depot America immediate, great, and irreparable injury to its business and property.

77.    Depot America has no adequate remedy at law.

## SIXTH COUNTERCLAIM
### Civil Conspiracy

78.    Depot America realleges and incorporates by reference paragraphs 1-77 of the counterclaims as if set forth in full here.

79.    On information and belief, Xcel and DiPilato conspired to extort money and other concessions from Depot America by withholding their required support obligations and threatening the viability of Depot America's business, by blocking access by Depot America to its own data, and by interrupting Depot America's business.

80.    The aforesaid conduct of Xcel and DiPilato constitutes civil conspiracy in violation of the laws of the States of New Jersey and Massachusetts.

81.    The aforesaid conduct of Xcel has caused, and unless restrained by this Court will continue to cause, immediate and irreparable injury to Depot America's property and business.

82.    Depot America has no adequate remedy at law.

24

## SEVENTH COUNTERCLAIM
### <u>Violation Of M.G.L. ch. 93A</u>

83.    Depot America realleges and incorporates by reference paragraphs 1-82 of the counterclaims as if set forth in full here.

84.    Xcel was and is a "person" engaged in "trade" or "commerce" in the Commonwealth of Massachusetts within the meaning of Mass. Gen. Laws ch. 93A, §§ 1 and 11.

85.    Depot America was and is a "person" engaged in "trade" or "commerce" in the Commonwealth of Massachusetts within the meaning of Mass. Gen. Laws ch. 93A, §§ 1 and 11.

86.    The aforesaid conduct of Xcel constitutes materially unfair and/or deceptive methods of competition and/or acts or practices declared unlawful by Mass. Gen. Laws ch. 93A, § 2, and was undertaken willfully and knowingly.

87.    As a direct and proximate result of Xcel's violation of Mass. Gen. Laws ch. 93A, Depot America has suffered, and will continue to suffer, a loss of money or property within the meaning of Mass. Gen. Laws ch. 93A, § 11 in an amount as yet undetermined.

88.    The aforesaid conduct of Xcel occurred primarily and substantially within the Commonwealth of Massachusetts and constitutes unfair or deceptive acts or practices in willful and knowing violation of Mass. Gen. Laws ch. 93A.

89.    Depot America has no adequate remedy at law.

### <u>PRAYER FOR RELIEF</u>

WHEREFORE, Depot America demands judgment as follows:

A.    A declaration that Depot America has not materially breached the terms of the agreement with Xcel relating to use of the ServiceWorks software, and that Depot America is entitled to use and continue the use of the ServiceWorks software;

25

B.      A declaration that the agreement between Depot America and Xcel relating to support for the ServiceWorks software is valid and enforceable, and that Xcel is obligated to provide support for the ServiceWorks software under such agreement;

C.      A preliminary and permanent injunction enjoining Xcel, DiPilato, Xcel's officers, agents, servants, employees, attorneys, and those in active concert or participation with Xcel who receive actual notice of the order by personal service or otherwise, from interfering with Depot America's continued use of the ServiceWorks software;

D.      A preliminary and permanent injunction enjoining Xcel from threatening to discontinue or discontinuing technical support for the ServiceWorks program which Depot America has licensed;

E.      A preliminary and permanent injunction enjoining Xcel, DiPilato, its officers, agents, servants, employees, attorneys, and those in active concert or participation with Xcel who receive actual notice of the order by personal service or otherwise, from informing any customers of Depot America or parties with which Depot America has a business relation that Depot America has violated its agreement with Xcel or that Depot America is not entitled to continued use of the ServiceWorks software;

F.      A monetary award to Depot America in the amount of the actual damages sustained by them resulting from any of the illegal conduct of Xcel and DiPilato;

G.      An award of damages to Depot America;

H.      An award to Depot America of compensatory, consequential, and/or incidental damages;

I.      An award to Depot America of exemplary and/or punitive damages;

ID # 403881v01/2585-8/ 08.18.2004

J.      An award to Depot America of its reasonable attorney fees and costs in this action; and

K.      Such other and further relief as this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Defendant counterclaim-plaintiff Depot America demands a trial by jury of all issues so triable on its counterclaims.

August 18, 2004                          Respectfully submitted,

                                         *Attorneys for Defendant counterclaim-plaintiff*
                                         *Depot America, Inc.*

                                         /s/ John Egan_____
                                         John Egan, BBO #151670
                                         Jennifer L. Finger, BBO #641830
                                         POSTERNAK BLANKSTEIN & LUND LLP
                                         Prudential Tower
                                         800 Boylston Street
                                         Boston, MA  02199
                                         Tel:    617-973-6226
                                         Fax:    617-722-4920

**OF COUNSEL:**
Charles P. Kennedy
Jeffrey S. Dickey
LERNER, DAVID, LITTENBERG,
  KRUMHOLZ & MENTLIK, LLP
600 South Avenue West
Westfield, NJ 07090-1497
Tel:    908 654 5000
Fax:    908 654 7866

## CERTIFICATE OF SERVICE

I, John Egan, certify that I served a copy of the within Answer and Counterclaims on Sean Ploen, Esquire, Boston Law Group, LLP, 20 Park Plaza, Suite 637, Boston, MA  02116, by first-class mail, postage prepaid, on August 18, 2004.

                                         /s/ John Egan_____
27

John Egan

ID # 403881v01/2585-8/ 08.18.2004